**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TONI FEIBUSCH,
    *Plaintiff-Appellant,*

v.

INTEGRATED DEVICE TECHNOLOGY,
INC. EMPLOYEE BENEFIT PLAN,
    *Defendant,*

and

SUN LIFE ASSURANCE CO. OF
CANADA,
    *Defendant-Appellee.*

No. 04-16501
D.C. No.
CV-03-00265-SOM
OPINION

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, District Judge, Presiding

Argued and Submitted
July 24, 2006—San Francisco, California

Filed September 7, 2006

Before: Procter Hug, Jr., Gilbert Stroud Merritt,* and
Richard A. Paez, Circuit Judges.

Opinion by Judge Hug

---

*The Honorable Gilbert Stroud Merritt, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

10805

## SUMMARY

### Labor and Employment/ERISA

The court of appeals reversed a judgment of the district court. The court held that ERISA policy language that proof of a disability claim "must be satisfactory to" the plan administrator was insufficient to merit deferential judicial review.

Appellant Toni Feibusch filed an ERISA action in district court in Hawaii against appellee ERISA plan administrator Sun Life Assurance Co. of Canada, challenging Sun Life's termination of her disability benefits. Under Feibusch's policy with Sun Life, proof of a disability claim "must be satisfactory to Sun Life." The Sun Life policy included a provision, "Item 6," that an employee, such as Feibusch, earning $50,000 or more must be able to perform "on a full-time basis all of the material and substantial duties" of her job before disability benefits may be terminated. Feibusch's doctor and some of Sun Life's evaluators agreed that Feibusch was incapable of full time work. The district court granted Sun Life's motion for summary judgment, denied Feibusch's motion for summary judgment, and directed the entry of judgment in favor of Sun Life.

Feibusch appealed.

[1] District courts must review ERISA benefit denial claims de novo unless the discretion to grant or deny claims is unambiguously retained by a plan administrator or fiduciary. The essential first step of the analysis, then, is to examine whether the terms of the ERISA plan unambiguously grant discretion to the administrator. [2] The dispositive policy language in Feibusch's case was that proof of a disability claim "must be satisfactory to Sun Life." This language did not unambiguously provide discretion to the plan administrator. [3] Because the Sun Life policy did not unambiguously indicate that the

plan administrator has authority, power, or discretion to determine eligibility or to construe the terms of the plan, the standard of review had to be de novo. The language made no reference whatsoever to granting or denying benefits. [4] If language only arguably confers discretion, it does not unambiguously confer discretion and cannot escape the default of de novo review. [5] Finally, ERISA cases that have held abuse of discretion review to be appropriate involved policy provisions that were far clearer in conferring discretion in plan administrators than the provision at issue in Sun Life's policy.

[6] Item 6 of the Sun Life policy applied only to a specific subset of employees that included Feibusch—those earning at least $50,000. Under well-settled contract principles, specific provisions control over more general terms. Item 6 governed and in order to terminate total disability benefits Sun Life had to show that Feibusch was able to perform on a full-time basis all of the material and substantial duties of her own occupation. [7] Because the district court did not apply the de novo standard of review and did not correctly interpret the plan's provisions for termination of total disability, the grant of summary judgment had to be reversed.

## COUNSEL

Mark D. DeBofsky, Daley, DeBofsky & Bryant, Chicago, Illinois; Alan Van Etten & Robert D. Harris, Damon Key Leong Kupchak Hastert, Honolulu, Hawaii, for the plaintiff-appellant.

Keith K. Hiraoka, Roeca Louie & Hiraoka, Honolulu, Hawaii; Mark E. Schmidtke, Schmidtke Hoeppner Consultants LLP, Valparaiso, Illinois, for the defendant-appellee.

## OPINION

HUG, Circuit Judge:

Toni Feibusch ("Feibusch") appeals the district court's decision that Sun Life Assurance Co. of Canada ("Sun Life") did not abuse its discretion in terminating her disability benefits. Feibusch's principal argument is that the district court incorrectly applied abuse of discretion review rather than de novo review. Feibusch was denied benefits under policy language that states that proof of a disability claim "must be satisfactory to Sun Life."

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we hold that de novo review applies under the policy language at issue. We reverse the summary judgment in favor of Sun Life and remand for trial proceedings.

I

### FACTUAL BACKGROUND

Beginning in 1984, Feibusch was employed by Integrated Device Technology, Inc. ("IDT") as a technical writer and administrative assistant. Her job duties included typing, answering phones, and creating and maintaining technical data sheets. In a typical day, she was required to sit for seven to seven and a half hours, stand for one-half to one hour, walk for one-half to one hour, and drive for one-quarter hour. Although her job was largely sedentary, she was occasionally required to bend, stoop, climb, reach above her shoulders, kneel, balance, push, and pull. In addition to typing, the job required constant movement of both hands, and use of the right hand with the computer mouse. Feibusch earned more than $50,000 annually.

Feibusch participated in an IDT-sponsored employee disability benefit plan (the "plan") regulated under the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1101 *et seq.* Benefits under the plan were partially funded by a group long-term disability insurance policy (the "policy") issued and administered by Sun Life.

Key to this appeal is the language of several Sun Life policy provisions. According to the policy, proof of a disability claim "must be satisfactory to Sun Life." An employee is "Totally Disabled" if she "because of Injury or Sickness, is unable to perform all of the material and substantial duties of [her] own occupation." An employee is "Partially Disabled" if she "because of Injury or Sickness is unable to perform all of the material and substantial duties of [her] own occupation on a fulltime basis," but is "performing at least one of the material and substantial duties of [her] own occupation or another occupation on a part-time or full-time basis" and "earning less than 80% of [her] Total Monthly earnings due to the same injury or Sickness that caused the Total or Partial Disability."

In early 1999, Feibusch complained of shoulder pain. She temporarily stopped working in March 1999. Dr. Arthur Ting, Feibusch's orthopedic surgeon, performed surgery on her shoulder in July and September 1999. Feibusch returned to work part-time in January 2000. On August 25, 2000, Sun Life approved an initial partial disability claim dating from March 1, 2000. In September 2000, Feibusch underwent a third shoulder surgery with Dr. Ting. In a November 2000 report, Dr. Ting noted continued improvement in Feibusch's condition and stated that despite pain, she had full range of movement in her shoulder and could work part-time if she were limited to medium manual activity. Feibusch continued to receive partial disability payments from Sun Life until January 2001.

In January 2001, however, Feibusch stopped working altogether and began collecting total disability payments. In March 2001, Dr. Ting reported that Feibusch was unable to

return to work. In April 2001, IDT terminated Feibusch's employment because she was unable to work full-time without restrictions. In July 2001, Dr. Ting found that Feibusch had severe limitation of functional capacity and was incapable of minimum sedentary activity.

As part of its claim review, Sun Life required Feibusch to submit to an independent medical examination by Dr. Charles Borgia. On December 5, 2001, Dr. Borgia stated that Feibusch "could work four hours a day if she took an extra strength Tylenol three times a day." A February 7, 2002 Sun Life file memo on Feibusch's case concluded that Feibusch continued to meet the plan's definition of disability but that she should undergo rehabilitation to aid her in returning to full or part-time work. On July 24, 2002, Dr. James Sarni reviewed Feibusch's file upon referral from Sun Life and concluded that she "has a functional capability of her shoulder that would allow her to perform her duties as an administrative assistant." Dr. Sarni opined that Feibusch could return to work on a part-time basis for a few months, and then return to full-time work.

On August 2, 2002, Sun Life determined that Feibusch no longer met the policy's definition of total disability and terminated her benefits effective July 31, 2002. Sun Life explained that "information in our file at this time fails to support [Feibusch's] continued physical incapacity to perform the duties of an administrative assistant." Feibusch appealed this decision through Sun Life's internal process.

As part of the appeal process, Steve Moon, a certified work capacity evaluator, performed a functional capacity evaluation of Feibusch for Sun Life. On October 31, 2002, Moon stated that although he believed Feibusch was in pain, she could return to work in her former position with certain limitations. On November 5, 2002, Feibusch underwent another independent medical examination by Dr. Walter Newman. Dr. Newman concluded that although Feibusch was likely to suffer

from "chronic shoulder pain syndrome" she was "capable of performing her own occupation as an administrative assistant and technical writer." On December 4, 2002, Sun Life issued a final decision denying Feibusch's appeal.

## II

## PROCEDURAL BACKGROUND

Feibusch filed an ERISA action against IDT and Sun Life. Pursuant to stipulation, IDT was dismissed from the case. The parties filed cross-motions for summary judgment. The district court granted Sun Life's motion for summary judgment, denied Feibusch's motion for summary judgment, and directed the entry of judgment in favor of Sun Life. Feibusch timely appealed.

## III

## ANALYSIS

### A. The Proper Standard of Review of Feibusch's Benefits Denial

[1] Following *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), we held that district courts must review ERISA benefit denial claims de novo unless the discretion to grant or deny claims is unambiguously retained by a plan administrator or fiduciary. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999) (en banc). Recently, in *Abatie v. Alta Health & Life Ins. Co.*, No. 03-55601, slip op. 9625, 9636-37 (9th Cir. Aug. 15, 2006) (en banc), we explained:

> When a plan does not confer discretion on the administrator to determine eligibility for benefits or to construe the terms of the plan, a court must review the denial of benefits de novo regardless of whether the plan at issue is funded or unfunded and regard-

less of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. De novo is the default standard of review. If de novo review applies, no further preliminary analytical steps are required. The court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the administrator operated under a conflict of interest.

But if the plan *does* confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion. We have held that, for a plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator. The essential first step of the analysis, then, is to examine whether the terms of the ERISA plan unambiguously grant discretion to the administrator.

(internal quotations and citations omitted, emphasis in original).

[2] The dispositive policy language in Feibusch's case is that proof of a disability claim "must be satisfactory to Sun Life." This language does not unambiguously provide discretion to the plan administrator. This conclusion clearly follows from our case law. In *Sandy v. Reliance Standard Life Ins. Co.* we stated, "Neither the parties nor the courts should have to divine whether discretion is conferred. It either is, in so many words, or it isn't." 222 F.3d 1202, 1207 (9th Cir. 2000). We subsequently emphasized:

If an insurance company seeking to sell and administer an ERISA plan wants to have discretion in making claims decisions, it should say so. It is not difficult to write, "The plan administrator has discre-

FEIBUSCH v. SUN LIFE ASSURANCE          10903

> tionary authority to grant or deny benefits under this plan." . . . [I]t is easy enough to confer discretion unambiguously if plan sponsors, administrators, or fiduciaries want benefits decisions to be reviewed for abuse of discretion.

*Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1113-14 (9th Cir. 2001) (internal quotation omitted).

[3] In light of these guiding statements, the Sun Life policy language does not merit deferential judicial review. Because the Sun Life policy does not unambiguously indicate that the plan administrator "has authority, power, or discretion to determine eligibility or to construe the terms of the Plan, the standard of review will be de novo." *Sandy*, 222 F.3d at 1207. This is not to say that "magic words" are required for a plan to reserve discretion. *See Abatie*, slip op. at 9637. Instead, the Sun Life policy language simply does not clearly indicate that Sun Life has discretion to grant or deny benefits. Indeed, the language makes no reference whatsoever to granting or denying benefits, and is included under the policy heading "What is considered proof of claim?" We construe ERISA policy ambiguities in favor of the insured. *See Thomas v. Oregon Fruit Products Co.*, 228 F.3d 991, 994 (9th Cir. 2000).

[4] In *Thomas*, we held that the ERISA policy term "[beneficiary must provide] satisfactory proof of Total Disability to us" was insufficient to merit deferential judicial review. *Id.* We explained that one possible interpretation of the term was that proof must be "satisfactory to us," which would "*arguably* confer[ ]" discretion on the plan administrator. *Id.* (emphasis in original). Under this reasoning, if language only arguably confers discretion, it does not unambiguously confer discretion and cannot escape the default of de novo review. We also note with approval the Second Circuit's persuasive analysis of similar policy language:

10904         FEIBUSCH V. SUN LIFE ASSURANCE

> [T]he phrase "proof satisfactory to [the decision-maker]" is an inadequate way to convey the idea that a plan administrator has discretion. Every plan that is administered requires submission of proof that will "satisfy" the administrator . . . . [T]he administrator's burden to demonstrate insulation from *de novo* review requires either language stating that the award of benefits is within the discretion of the plan administrator or language that is plainly the functional equivalent of such wording . . . . [C]ourts should require clear language and decline to search in semantic swamps for arguable grants of discretion.

*Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir. 1999).

[5] Finally, we examine our ERISA cases that have held abuse of discretion review to be appropriate. We conclude that these cases involve policy provisions that are far clearer in conferring discretion in plan administrators than the provision at issue in Sun Life's policy. *See Abatie*, slip op. at 9637 ("The responsibility for full and final determinations of eligibility for benefits; interpretation of terms; determinations of claims; and appeals of claims denied in whole or in part . . . rests exclusively with [insurer]."); *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004) ("[Insurer] has the discretion to construe and interpret the terms of the Plan and the authority and responsibility to make factual determinations."); *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002) (Administrator has "power" and "duty" to "interpret the plan and to resolve ambiguities, inconsistencies and omissions" and to "decide on questions concerning the plan and the eligibility of any Employee . . ." ); *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1107 (9th Cir. 2000) ("[Plan Administrator has] sole discretion to interpret the terms of the Plan"); *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 n.5 (9th Cir.

1999) ("[Insurer] shall have the sole discretion to interpret the terms of the Plan and to determine eligibility for benefits.").

Because we have concluded that a de novo standard of review applies, we need not reach Feibusch's arguments that abuse of discretion review is improper because of 1) an improper delegation of discretion from IDT to Sun Life, or 2) Sun Life's conflict of interest in being both the payor and administrator of benefits. These issues are only pertinent to an abuse of discretion standard of review.

### B. The District Court's Interpretation of Policy Language

Feibusch argues that the district court misinterpreted the Sun Life policy by ignoring the provision that an employee earning $50,000 or more must be able to perform "on a full-time basis all of the material and substantial duties" of her job before disability benefits may be terminated. Because Dr. Ting and some of Sun Life's evaluators agreed that she was incapable of full-time work, Feibusch argues that there was no proper ground for her disability benefits to cease.

Under the plan, the provisions for when disability benefits will cease are as follows:

**Total or Partial Disability Benefits will cease on the earliest of:**

1. the date the Employee is no longer Totally or Partially Disabled;

2. the date the Employee dies;

3. the end of the Maximum Benefit Period;

4. the date the Employee fails to provide adequate employment earnings information or proof of

10906      FEIBUSCH V. SUN LIFE ASSURANCE

    continuing Total or Partial Disability as requested;

5. the date the Employee's current earnings exceed 80% of his Indexed Total Monthly Earnings;

**All Employees earning $50,000 or more annually**

6. the date Sun Life determines the Employee is able to perform on a full-time basis all of the material and substantial duties of his own occupation, even if the Employee chooses not to work.

**All Employees earning under $50,000 annually**

7. for the first 24 months of Total Disability or for Partial Disability, the date Sun Life determines the Employee is able to perform on a full-time basis all of the material and substantial duties of his own occupation, even if the Employee chooses not to work;

8. after the first 24 months of Total Disability, the date Sun Life determines the Employee is able to perform on a full-time basis all of the material and substantial duties of any occupation for which he is or becomes reasonably qualified for by education, training or experience, even if the Employee chooses not to work.

[6] The provisions are oddly structured, with three separate headings, including one that applies only to item 6. The district court determined that items 1 and 6 were alternate bases for terminating total disability payments. Actually, these provisions cannot serve as alternate bases because item 1 is inconsistent with item 6. Item 1 may be meant to generally apply to all employees, but it conflicts with Item 6, which

FEIBUSCH V. SUN LIFE ASSURANCE     10907

applies only to a specific subset of employees that included Feibusch — those earning at least $50,000. "Under well-settled contract principles, specific provisions control over more general terms." *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1296 (9th Cir. 1997). Under item 1, total disability benefits cease when the employee is no longer totally disabled.[1] Under the plan an employee is totally disabled when she is unable to "perform all of the material and substantial duties of [her] own occupation." Item 6 uses the same exact quoted words except adding the phrase "on a full-time basis." Thus, if item 1 alone can serve as a basis for terminating benefits, item 6 — the only provision specific to employees earning at least $50,000 — would serve no purpose whatsoever. "[W]e must interpret the contract in a manner that gives full meaning and effect to all of the contract's provisions." *In re Crystal Properties, Ltd.*, 268 F.3d 743, 748 (9th Cir. 2001). Finally, we note that an ERISA policy ambiguity must be interpreted in favor of the employee. *See Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993). Therefore, item 6 governs and in order to terminate total disability benefits Sun Life must show that Feibusch was able to perform *on a full-time basis* all of the material and substantial duties of her own occupation.

[7] Because the district court did not apply the de novo standard of review and did not correctly interpret the plan's provisions for termination of total disability, we reverse the grant of summary judgment and remand.

## IV

## PROCEEDINGS ON REMAND

The district judge's order stated that if the court conducted a trial under a de novo standard "the court would find from

---

[1] The parties agree that Feibusch is not eligible for partial disability under the plan because she is no longer working.

the overwhelming evidence that Feibusch could work *at least part-time*." (emphasis added). As we have indicated, that would not be the appropriate inquiry, as the question would be whether she could work full-time.

There are significant differences and claims of inaccuracy regarding the written statements of the various evaluators in the administrative record. In resolving these discrepancies, it may be advisable for the court at trial to consider additional evidence and perhaps oral testimony as is permitted in ERISA cases. *See Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995); *Thomas*, 228 F.3d at 997 (suggesting that admission of additional evidence would be helpful on remand when the credibility of various medical experts is at issue); *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir. 1993) (holding that district court did not abuse its discretion in considering live expert medical testimony at ERISA bench trial, when medical issue was complex and when payor on policy was also the plan administrator). In resolving any factual dispute the court must issue findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

## V

## CONCLUSION

The summary judgment is **REVERSED** and **REMANDED** for trial consistent with this opinion.