LEXSEE

Caution
As of: Apr 25, 2007

BERTHA T. EDGERTON, Plaintiff, v. CNA INSURANCE, CO., ET AL.,
Defendants.

CIVIL ACTION NO. 01-2597

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

215 F. Supp. 2d 541; 2002 U.S. Dist. LEXIS 15490

August 6, 2002, Decided

**DISPOSITION:** [**1] Plaintiff's motion for summary judgment was granted. Defendants' motion for summary judgment was denied. Judgment was entered in favor of plaintiff and against defendants CNA Insurance Co. and Continental Casualty Co. Case was remanded to the defendants CNA Insurance Co. and Continental Casualty Co. for calculation of all past due benefits owed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee and defendant plan administrator cross-moved for summary judgment in the former employee's action alleging violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., following the termination of her long-term disability benefits.

**OVERVIEW:** The plan administrator claimed that it reviewed the former employee's treating physician's records, but determined, based upon a functional capacity examination and reviews by two vocational specialists, that her treating physician's conclusions were inconsistent with her actual functionality. The court held that the plan administrator's termination of the former employee's long-term disability benefits was not supported by substantial evidence and constituted an abuse of discretion in light of the former employee's treating physician's opinion that the former employee was totally disabled. The court found that the plan administrator's review was inadequate because it did not give substantial weight to the treating physician's opinion, it failed to obtain an independent medical examination for the former employee, and it failed to credit a prior social security determination that the former employee was disabled.

**OUTCOME:** Summary judgment was granted for the former employee. Summary judgment was denied to the plan administrator.

**CORE TERMS:** disabled, nurse, administrator, occupation, pain, disability, functionality, diagnosis, disability benefits, treating physician, vocational, chronic, summary judgment, functional, treating, lift, arbitrary and capricious, totally disabled, pound, long-term, physical therapist, automobile accident, exacerbated, performing, prognosis, disease, walk, substantial evidence, non-movant, personally

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*

Page 1


EXHIBIT F

215 F. Supp. 2d 541, *; 2002 U.S. Dist. LEXIS 15490, **1
34 Employee Benefits Cas. (BNA) 2880

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1] Summary judgment is appropriate if the moving party can show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. The court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
[HN2] On a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. Once the movant has done so, however, the non-moving party cannot rest on its pleadings. Fed. R. Civ. P. 56(e). Rather, the non-movant must then make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file.

*Pensions & Benefits Law > Employee Benefit Plans > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Judicial Review > Standards of Review > Arbitrary & Capricious Review*
[HN3] Where an Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., plan gives the plan administrator discretionary authority to interpret the terms of the plan, judicial review of a denial of benefits is limited to determining whether the administrator abused his or her discretion. Under these circumstances, the court must apply an arbitrary and capricious standard. Under the arbitrary and capricious standard, the reviewing court is not free to substitute its own judgment for that of the administrator in determining eligibility for plan benefits. A court must defer to the administrator of an employee benefit plan unless the administrator's decision is without reason, unsupported by substantial evidence or erroneous as a matter of law.

*Administrative Law > Judicial Review > Standards of Review > Abuse of Discretion*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
[HN4] Where there is an inherent conflict of interest because an insurance company both determines eligibility for benefits and pays for those benefits out of its own funds, however, the could should apply a heightened "abuse of discretion" standard. In determining what the higher standard should be, there is a "sliding scale approach, according different degrees of deference depending on the apparent seriousness of the conflict. The court should take into account the sophistication of the parties, the information accessible to the parties, and the financial arrangement between the insurer and the company.

*Administrative Law > Judicial Review > Standards of Review > General Overview*
*Environmental Law > Litigation & Administrative Proceedings > Judicial Review*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
[HN5] The court's review of an Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., plan admininstrator's decision is limited to evidence that was before the administrator at the time of the benefit denial.

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > General Overview*
*Labor & Employment Law > Disability & Unemployment Insurance > Unemployment Compensation > Eligibility > Suitable Employment*
[HN6] An application for unemployment compensation benefits under Pennsylvania law requires that the individual must be able to work and available for suitable work. 43 Pa. Cons. Stat. Ann. § 801(d)(1).

*Administrative Law > Judicial Review > Standards of Review > Arbitrary & Capricious Review*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims &*

215 F. Supp. 2d 541, *; 2002 U.S. Dist. LEXIS 15490, **1
34 Employee Benefits Cas. (BNA) 2880

*Remedies > General Overview*
[HN7] The court in determining whether a plan administrator's denial of a plaintiff's claim for benefits was arbitrary or capricious must look only to the information contained in the claims file and available to the claims administrator when denying the plaintiff's claim.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Public Health & Welfare Law > Social Security > Disability Insurance & SSI Benefits > Eligibility > Disability Determinations > Treating Physicians*
*Workers' Compensation & SSDI > Social Security Disability Insurance > Administrative Proceedings > Evidence > Medical Evidence*
[HN8] Under the treating physician rule, applicable to Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., claims, the opinions of treating physicians are to be given substantial, and sometimes even controlling, weight. The rationale for this "treating physician rule" is based upon the reasoning that treating physicians are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. Such a rationale equally applies to the area of determining whether an individual is disabled for the purposes of an ERISA plan, where a plan administrator must look at the claims file to determine whether an individual qualifies for disability benefits.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Judicial Review > General Overview*
*Workers' Compensation & SSDI > Social Security Disability Insurance > Administrative Proceedings > Evidence > Medical Evidence*
[HN9] Although an Social Security Administration decision may not be dispositive in determining whether an Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., administrator's decision is arbitrary and capricious, it is a factor that should be considered.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
[HN10] An Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., plan administrator's picking and choosing of a treating physician's medical review constitutes a selective reading of the medical records that is impermissible.

**COUNSEL:** For BERTHA T. EDGERTON, PLAINTIFF: ROBERT J. LUKENS, COMMUNITY LEGAL SERVICES INC., JANET F. GINZBERG, ESQ., COMMUNITY LEGAL SERVICES, PHILA., PA USA.

For CNA INSURANCE CO, CONTINENTAL CASUALTY CO., DEFENDANTS: JUNE A. TAIMA, CHRISTIE, PABARUE, MORTENSEN AND YOUNG, PHILA, PA USA.

For CNA INSURANCE CO, CONTINENTAL CASUALTY CO., QVC, INC., DEFENDANTS: DORY L. SATER, PHILADELPHIA, PA USA.

**JUDGES:** EDUARDO C. ROBRENO, J.

**OPINION BY:** EDUARDO C. ROBRENO

**OPINION:**

[*542] MEMORANDUM

EDUARDO C. ROBRENO, J.

August 6, 2002

Plaintiff, Bertha T. Edgerton, filed a complaint against defendants CNA Insurance Companies and Continental Casualty Company ("Continental") alleging violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and seeking reinstatement of long-term disability [**2] benefits. Before the court are the parties' cross motions for summary judgment. n1 For the reasons that follow, the court will grant the plaintiff's motion for summary judgment (doc. no. 30), deny the defendants' motion for summary judgment (doc. no. 31) and remand the case to

215 F. Supp. 2d 541, \*542; 2002 U.S. Dist. LEXIS 15490, \*\*2
34 Employee Benefits Cas. (BNA) 2880

the administrator to calculate the benefits owed to the plaintiff.

n1 [HN1] Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. See Big Apple BMW, Inc. v. BMW of N. Amer., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

[HN2] The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 265, 106 S. Ct. 2548 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. See Fed. R. Civ. P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

[\*\*3]

I. BACKGROUND

The plaintiff is a former employee of QVC, Inc. ("QVC"). QVC contracted with defendant Continental for a long-term disability policy (the "policy") for its employees. Under the policy, Continental administers claims for disability benefits and has discretionary authority to determine eligibility benefits. Because the court is faced [\*543] with two competing opinions of the extent of the plaintiff's disability, one, that of her treating physician, and, two, that of a registered nurse assigned to review disability claims, a detailed review of the claims process is warranted in this case.

After suffering an injury to her back at QVC, the plaintiff applied for benefits under the policy. The policy provides that an employee at Edgerton's eligibility level, who is unable to perform the "substantial and material duties of [her] regular occupation," is entitled to long-term disability benefits for a 24 month period (the "Your Occupation Period"). Defs' Ex. A at CCC 0048. Thereafter, the employee is entitled to receive disability benefits if the employee is "continuously unable to engage in any occupation for which [she] is or becomes qualified by education, training or experience. [\*\*4] " Id. Because Continental determined that Edgerton was disabled for her own occupation, Continental approved long-term disability benefits for the Your Occupation Period. Nevertheless, Continental determined that Edgerton was not disabled for any occupation, and thus denied benefits at the conclusion of the Your Occupation Period. n2 Edgerton appealed Continental's decision and her appeal was denied on August 20, 1999.

n2 Edgerton's 24 month period for long term disability benefits as a result of being disabled during the Your Occupation Period ended on October 13, 1998. Nevertheless, Continental continued to pay Edgerton benefits through March 13, 1999 in "Good Faith" while it evaluated whether Edgerton was disabled for "any occupation."

On May 9, 1996, while employed at QVC as a jewelry inspector, Edgerton injured her back when attempting to lift a box. The following day, Edgerton was treated by her physician, Lawrence T. Browne, M.D., who diagnosed her with degenerative disc disease and advised her not [\*\*5] to return to work. An MRI conducted on May 15, 1996 confirmed Dr. Browne's diagnosis. Dr. Browne then referred Edgerton to orthopedist Laurence R. Wolf, M.D., who concluded on June 6, 1996 that Edgerton's MRI results were consistent with L5 radiculopathy. Edgerton continued to see Dr. Browne on a regular basis throughout the summer. On September 3, 1996, Howard A. Richter, M.D., a neurosurgeon, concluded that "Edgerton has lumbar 5 radiculopathy on the left secondary to degenerative disc disease which is slowly resolving." Id. at CCC 0283. Edgerton's condition improved and on October 8, 1996, Dr. Browne released Edgerton to return to work on restrictive duty as of October 14, 1996.

215 F. Supp. 2d 541, *543; 2002 U.S. Dist. LEXIS 15490, **5
34 Employee Benefits Cas. (BNA) 2880

In February 1997, Kristi Campbell, a vocational case manager with Continental, reviewed Edgerton's file to assess Edgerton's occupational condition. Campbell spoke directly with Edgerton on March 14, 1997 and discussed Edgerton's work history and efforts to obtain employment. On that date, Campbell reported that Edgerton could no longer perform her prior work as a jewelry inspector, but could perform such work as a hotel desk clerk, security clerk/guard, alarm monitoring clerk, retail sales receipt [**6] auditor, and telemarketing sales representative.

On March 17, 1997, three days after Campbell's assessment of Edgerton's employment capabilities, Edgerton was involved in an automobile accident and she returned to Dr. Browne for treatment. Dr. Browne submitted a "Physician's Statement" to Continental in June 1997, which diagnosed Edgerton with "post traumatic lumbosacral back pain with disc disease." Id. at CCC 0234. His prognosis was "guarded" and that "no gainful employment [is] envisioned at this time." Id. at CCC 0235. He reported her condition as "chronic" and "totally disabling," one [*544] which "requires chronic pain management." Id.

Shortly after Dr. Browne submitted his June 1997 Physician's Statement, Angie Simms wrote Edgerton's counsel that, while Edgerton qualified for benefits during the Your Occupation Period because she was disabled from performing the duties of her regular occupation, Continental felt that at this time, "based upon her abilities and transferable skills," she was able to perform several other jobs, including those identified by Kristi Campbell on March 14, 1997, three days prior to the accident. Id. at CCC 0238. Thus, Simms concluded that [**7] Edgerton was not eligible for benefits beyond October 13, 1998. Edgerton's counsel responded to the letter, notifying Continental of the car accident and Edgerton's exacerbated condition.

Edgerton continued to see her physician, Dr. Browne. Following an office visit on November 3, 1997, Dr. Browne submitted an additional Physician's Statement to Continental, reporting that Edgerton had a "herniated lumbar disc" with left sciatica and "chronic low back instability." Id. at CCC 0226. He noted that her prognosis was "poor - permanent disability" due to permanent chronic pain. Id. at CCC 0227. On May 1, 1998, Dr. Browne sent an additional Physician's Statement, which reiterated his diagnosis and prognosis as reported in June 1997 and November 1997. He remarked that Edgerton required "chronic pain management." Id. at CCC 0225. Edgerton continued to see Dr. Browne throughout the summer, including office visits on July 16, 1998 and August 10, 1998.

On May 1, 1998, Edgerton received a favorable decision from the Social Security Administration ("SSA") on her application for Social Security Disability Insurance benefits ("SSDI"). The SSA determined that Edgerton fit its definition [**8] of disabled as of March 17, 1997, the date of the automobile accident. The SSA found that Edgerton had not engaged in substantial gainful employment since March 17, 1997 and had severe back problems that were supported by objective medical evidence, including medical records from Dr. Browne, Dr. Louis-Charles, Dr. Grossinger, a neurologist, and Dr. Fuller, a colleague of Dr. Browne. n3 With regard to her functioning capacity, the SSA concluded that Edgerton could lift and carry 10 pounds occasionally, stand and walk for one hour per workday (15 minutes at a time), sit for two and one half hours per workday (15 minutes at a time), and do no climbing, stooping, crouching, or crawling. Such capabilities placed her "notably below the full range of sedentary work." Id. at CCC 219. Although the SSA noted that State agency physicians had stated on March 21, 1997 that Edgerton could perform medium work, the SSA concluded that those physicians "did not have the benefit of any evidence relating to her exacerbated condition since [the date of the car accident]." Id.

> n3 The medical records from these physicians, excluding those from Dr. Browne, were not in Edgerton's claim file.

[**9]

In August 1998, Continental began evaluating Edgerton's disability from any occupation to determine whether or not Edgerton should receive benefits beyond the 24 month Your Occupation Period. In a case management database entry on August 18, 1998, Nancy Alexandrowicz, RNC, a nurse case manager with Continental, reported that she had reviewed Edgerton's file. In reviewing the file, Nurse Alexandrowicz noted that Edgerton had been interviewed on March 14, 1997 by Kristi Campbell, that Cambell indicated at that time that Edgerton was employable, [*545] and that since Campbell's report, Edgerton had suffered a motor vehicle

215 F. Supp. 2d 541, *545; 2002 U.S. Dist. LEXIS 15490, **9
34 Employee Benefits Cas. (BNA) 2880

accident which "has set her back." Id. at CCC 0095. Nurse Alexandrowicz also reviewed Dr. Browne's May 1, 1998 Physician's Statement, which indicated that Edgerton was disabled and required chronic pain management. Nurse Alexandrowicz questioned whether the reported disability was for each and every occupation and noted that based upon Campbell's assessment, it is possible that Edgerton was employable. Nevertheless, Nurse Alexandrowicz indicated that "without further medicals available, current physical functionality [is] unknown." Id. Nurse Alexandrowicz suggested [**10] that a vocational rehabilitation interview may provide a better understanding of Edgerton's condition, but did not order an interview at that time. Nurse Alexandrowicz did request updated medical records and a physical capacities evaluation ("PCE") from Dr. Browne in order to assess Edgerton's functional capacity.

On November 12, 1998, Dr. Browne observed Edgerton and filled out the PCE as requested by Nurse Alexandrowicz. In the PCE, Dr. Browne reported that Edgerton would be unable to sit, stand or walk for one hour at a time. He also noted that she should not lift, carry or push more than five pounds, nor could she bend, squat, crawl, climb or reach. In the PCE, Dr. Browne concluded that she is "totally and permanently disabled." Id. at CCC 0180.

Upon receiving the PCE on November 17, 1998, Nurse Alexandrowicz reported in the claims management database that if Dr. Browne's evaluation accurately reflected Edgerton's current functionality, then Edgerton was totally disabled. She indicated that if the medical records requested, but still not received, from Dr. Browne did not support the PCE, then Continental would consider a functional capacities evaluation ("FCE")' to determine [**11] Edgerton's current functionality.

On November 20, 1998, Alexandrowicz received Dr. Browne's notes from the November 12, 1998 office visit. On December 11, 1998, Alexandrowicz received the medical records from Dr. Browne for office visits on November 3, 1997, July 16, 1998 and August 10, 1998. These records all indicated that Edgerton suffered from "post traumatic sacroiliac disease with left lower back instability." Id. at CCC 0093. Nurse Alexandrowicz assessed that the "objective medical records provided support that [Edgerton] continues [with] symptomatology which has disabled [her] from performing her job as jewelry packer/inspector." Id. She indicated her plan to discuss a possible FCE to determine the actual functionality, "as PCE completed by physician indicates that [Edgerton] has limited functionality." Id.

In January 1999, Tony Gulledge, a vocational case manager with Continental, contacted Edgerton. Edgerton told Gulledge that her back pain was continuing, and Gulledge noted that "there appears to be no reasonable function level for full time sedentary work capabilities." n4 Id. at CCC 0091. Gulledge reported Edgerton's complaints, including her [**12] claims that she required assistance performing daily tasks. Gulledge also noted that Edgerton stated that "she can sit/stand/walk only for 10 minutes at one time maximum." Id. Gulledge recommended that Edgerton undergo [*546] an FCE to test her appropriate function level. On January 21, 1999, Nurse Alexandrowicz requested an FCE. Nurse Alexandrowicz also set up surveillance of Edgerton, which occurred on February 23 and 24. The surveillance report noted that Edgerton walked with the use of a wooden cane.

> n4 Gulledge also reported that Edgerton had told him that she was hospitalized in April 1998 with severe back pain and diabetes. Dr. Browne, in his May 1, 1998 treatment notes also indicates that Edgerton was admitted to City Avenue Hospital in April 1998 for "acute urinary tract infection with elevation of blood sugars and continuing low back pain." The hospital records, however, were not in the claims record.

Edgerton underwent an FCE at HealthSouth Rehabilitation Center of Philadelphia on February 23, 1999. n5 [**13] The physical therapist that conducted the FCE reported that based upon the functional testing performed, Edgerton "is presently lifting in the light category of work," as she accomplished a knuckle to shoulder lift of 22.5 pounds, a shoulder to overhead lift of 15 pounds, and carry of 20 pounds 100 feet without pivoting. n6 Id. at CCC 0108. Additionally, "during positional tolerance testing, [Edgerton] demonstrated tolerance of sitting on a constant basis and standing, walking, forward reaching and grasping on a frequent basis." Id. The FCE thus concluded that "Tina Edgerton has adequately demonstrated the ability to perform light category work despite her deconditioned state and self-limiting behavior." Id.

215 F. Supp. 2d 541, *546; 2002 U.S. Dist. LEXIS 15490, **13
34 Employee Benefits Cas. (BNA) 2880

> n5 Edgerton did not show for a FCE scheduled on February 9, 1998. She stated that she was in California on that date and that she did not know of the appointment.
>
> n6 The FCE noted that she did not perform the floor to knuckle test because Edgerton's reported inability to achieve squat position.

[**14]

Upon review of the FCE report, Nurse Alexandrowicz concluded that Edgerton was not totally disabled for each and every occupation. Nurse Alexandrowicz referred the file to Gulledge to review the FCE. In a March 9, 1999 memorandum to Deidra Chitty, a Continental Disability Specialist, Gulledge reported that the new FCE "demonstrates LIGHT work potential" and indicated that Edgerton was capable of performing the jobs identified by Kristi Campbell on March 14, 1997.

On the same day she received the memorandum from Gulledge, March 9, 1999, Chitty notified Edgerton that upon an evaluation of her disability, Continental determined that although she had impairments that prevented her from performing her own occupation, there were other jobs that she could perform. Thus, since she was not disabled from performing the substantial duties of any occupation for which she is qualified by education, training or experience, her long term disability benefits would be terminated as of March 13, 1999. n7 Chitty informed Edgerton of her right to file an appeal of the claim decision.

> n7 Continental paid Edgerton benefits beyond the original 24 month Your Occupation Period while it was evaluating Edgerton's disability claim. See supra n.2.

[**15]

On March 29, 1999, Edgerton formally requested reconsideration of the termination of long-term disability benefits. On May 7, 1999, Edgerton sent Continental a note from Dr. Browne, who explained that Edgerton "has been under my care since her injury. She remains totally disabled for any gainful employment." Id. at CCC 0097. Upon receipt of this note, Chitty wrote Edgerton on May 11, 1999 that the decision to deny further benefits beyond March 13, 1999 remained unchanged, and that her claim file was being forwarded to the Appeals Committee.

On June 3, 1999, Dr. Browne submitted a three page report that discussed Edgerton's diagnosis, her functional capacity, and the results of the FCE. Dr. Browne noted that Edgerton suffered from a "bulging lumbosacral disc with left sciatica and sacroiliitis," which has diminished her functional capacity. Id. at 0079. He explained [*547] that she can lift no more than ten pounds and that intermittently she can lift one pound for up to four hours. He also indicated that she has trouble holding a sitting position and must stand or change her position to be comfortable. With regard to standing, Dr. Browne explained that she cannot maintain an erect [**16] position without developing significant "left lower lumbosacral and iliac pain and left sciatica almost immediately." Id. at 0080. He noted that she cannot walk more than 15 or 20 yards without significant back pain, and would not be able to do so for a longer distance unless in case of an emergency.

Dr. Browne also criticized the results of the physical therapist who suggested that Edgerton might have intentionally limited her functioning during the FCE. Dr. Browne stated that he never has found Edgerton to limit her functionality and that he "believes that the experience of the physical therapist is so limited when compared to that of a practicing medical doctor that they do not understand the involuntary guarding that is associated with the anticipation of a pain producing activity." Id. at 0081. He noted that other physicians who observed her did not suggest that she had intentionally distorted her functionality. Finally, Browne concluded that "Edgerton is totally disabled now and has been since the date of her work related accident and will continue to be so for the foreseeable future." Id. at 0081.

On August 20, 1999, the Appeals Committee determined that the company's [**17] decision to terminate benefits was correct, and that there were "no objective findings to substantiate continued disability." Id. at CCC 0072. The Appeals Committee noted the results of the FCE and the review of the file by a Continental vocational specialist, who indicated that Edgerton could work in other occupations with her limitations. The Appeals Committee also noted that although Dr. Browne "has continually stated that [Edgerton] remains totally disabled, we have not received any information that would substantiate those statements." Id. at 0072. Furthermore, the Appeals

215 F. Supp. 2d 541, *547; 2002 U.S. Dist. LEXIS 15490, **17
34 Employee Benefits Cas. (BNA) 2880

Committee explained that its decisions are based not solely on a physician's diagnosis, but on the objective findings of functionality.

## II. DISCUSSION

### A. Standard of Review

[HN3] Where an ERISA plan gives the plan administrator discretionary authority to interpret the terms of the plan, judicial review of a denial of benefits is limited to determining whether the administrator abused his or her discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989). Under these circumstances, the court must apply an arbitrary and capricious [**18] standard. See Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 44-45 (3d Cir. 2000). Under the arbitrary and capricious standard, this court "is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3d Cir. 1997) (quotation omitted). A court must defer to the administrator of an employee benefit plan unless the administrator's decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Abnathya, 2 F.3d at 45 (quotation omitted).

[HN4] Where there is an inherent conflict of interest because an insurance company both determines eligibility for benefits and pays for those benefits out of its own funds, however, the could should apply a heightened "abuse of discretion" standard. See Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 390 (3d Cir. 2000). It is undisputed that Continental both funds [*548] and administers the plan, and thus a heightened abuse of discretion standard is appropriate. In determining what the higher standard should be, the court in Pinto adopted [**19] a "sliding scale approach, according different degrees of deference depending on the apparent seriousness of the conflict." Id. at 391. "The court should take into account the sophistication of the parties, the information accessible to the parties, and the financial arrangement between the insurer and the company." Id. at 392. Nevertheless, because the court concludes that Continental's denial of plaintiff's claim for benefits is not supported by substantial evidence and thus cannot be sustained even under the ordinary arbitrary and capricious standard, it is unnecessary to determine what heightened level along the sliding arbitrary and capricious standard to apply.

### B. Decision to Deny Benefits

The issue before the court is whether, under the arbitrary and capricious standard, the decision to deny long-term benefits to the plaintiff, first in its letter of March 9, 1999 and then after review by the Appeals Committee on August 20, 1999, constituted an abuse of discretion. [HN5] The court's review of Continental's decision is limited to evidence that was before the administrator at the time of the benefit denial. n8 See Mitchell 113 F.3d at 440. [**20] Continental contends that it reviewed Edgerton's treating physician's records, but determined, based upon the FCE and reviews by two vocational specialists, that Dr. Browne's conclusions were inconsistent with Edgerton's actual functionality. The court, however, upon review of the evidence before the administrator, finds that the decision to deny benefits was not supported by substantial evidence and therefore arbitrary and capricious.

---

n8 Continental contends that Edgerton failed to disclose certain information to it during the claim review process. Continental notes that in discovery it learned that Edgerton had been employed on several occasions since May 9, 1996, the date of her accident at work and that she had never reported that employment information to Continental. Additionally, Continental learned that during the period in which she claimed disability, she had [HN6] applied for unemployment compensation benefits, which, under Pennsylvania law, requires that the individual must be "able to work and available for suitable work." 43 Pa. C.S.A. § 801(d)(1). Finally, Continental notes that after her car accident Edgerton underwent a vocational/disability evaluation during the course of litigation concerning her March 1997 automobile accident that indicated that Edgerton was able to perform sedentary work.

Plaintiff denies that she failed to disclose any information and also challenges the relevancy of this information. [HN7] The court in determining whether Continental's denial of plaintiff's claim for benefits was arbitrary or capricious must look only to the information contained in the claims file and available to the claims administrator

Case 1:03-cv-00265-SOM-LEK    Document 88-8    Filed 04/24/2007    Page 9 of 12

215 F. Supp. 2d 541, *548; 2002 U.S. Dist. LEXIS 15490, **20
34 Employee Benefits Cas. (BNA) 2880

when denying plaintiff's claim. In Skretvedt v. E.I. DuPont de Nemours & Co., 268 F.3d 167, 184 (3d Cir. 2001), the Third Circuit court concurred with the policy identified in University Hospitals of Cleveland v. Emerson Electric Co., 202 F.3d 839 (6th Cir. 2000), that the court "would not defer to post hoc rationales for denying benefits claims generated for the purpose of litigation by ERISA plan administrators when those rationales did not appear in the denial letters sent to the benefits claimants or in the administrative record." 268 F.3d at 177 n.8. See also Carney v. Int'l Bhd. of Elec. Workers, Local Union 98 Pension Fund, 00- CV-6279, 2002 U.S. Dist. LEXIS 9326, at *20 (E.D. Pa. May 23, 2002). This information is therefore not relevant to the court's review of whether the administrator's decision was arbitrary or capricious.

[**21]

The plaintiff's treating physician in this case, Dr. Browne, repeatedly noted that the plaintiff was disabled as a result of her May 1996 injury and that her injury was exacerbated by the March 1997 automobile accident. Following the accident, Dr. Browne saw Edgerton on a continuing basis, including visits in June 1997, November [*549] 1997, July 1998, August 1998 and November 1998. Dr. Browne consistently indicated that Edgerton suffered from chronic lower back pain, with difficulty walking, sitting, and standing. Dr. Browne's PCE, requested by Continental and completed after a November 1998 medical examination, also indicated that Edgerton was totally disabled. Dr. Browne formed his medical opinions of Edgerton's condition by personally observing her over an extended period, and thus, as a result of his medical relationship with Edgerton was in the unique position of being able to assess fully plaintiff's functional capacity. See Skretvedt, 268 F.3d at 184. See also Cohen v. Standard Ins. Co., 155 F. Supp.2d 346, 352 (E.D. Pa. 2001) (noting that defendant's physicians reviewed "cold test results" of plaintiff's medical file while the plaintiff's treating [**22] physicians "formed opinions based upon what they personally observed").

As the Third Circuit noted in Skretvedt, in the "analogous area of disability benefits under the Social Security Act," [HN8] the opinions of treating physicians are to be given substantial, and sometimes even controlling, weight. See Skretvedt, 268 F.3d at 184. See also Regula v. Delta Family-Care Disability Survivorship Plan, 266 F.3d 1130, 1139 (9th Cir. 2001) (applying the "treating physician rule" to an action under ERISA "to test the reasonableness of the administrator's positions"). The rationale for this "treating physician rule" is based upon the reasoning that treating physicians:

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

Fargnoli v. Halter, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(d)(2) [**23] ). Such a rationale equally applies to the area of determining whether an individual is disabled for the purposes of an ERISA plan, where a plan administrator, like the SSA, must look at the claims file to determine whether an individual qualifies for disability benefits. Given the circumstances of this case in which the plaintiff's treating physician repeatedly indicated that she was disabled, and where no other physician had suggested that she was not disabled, the court finds that Dr. Browne's medical opinions, as her treating physician, should be entitled to substantial weight.

Additionally, Dr. Browne's conclusions are consistent with the determination of the SSA that Edgerton was disabled as of the date of her motor vehicle accident. [HN9] Although an SSA decision may not be dispositive in determining whether an ERISA administrator's decision is arbitrary and capricious, it is a factor that should be considered. See Dorsey v. Provident Life and Accident Ins. Co., 167 F. Supp.2d 846, 856 n.11 (E.D. Pa. 2001). The SSA, in its "Rationale" section of its decision, laid out the medical evidence leading to a determination of disability. n9 The SSA noted that Edgerton reported [**24] to Dr. Louis-Charles that her condition had deteriorated, and Dr. Louis-Charles observed limited motion and marked tenderness. Furthermore, an MRI from May 1997 showed

215 F. Supp. 2d 541, *549; 2002 U.S. Dist. LEXIS 15490, **24
34 Employee Benefits Cas. (BNA) 2880

a "likely herniation at L5-S1 and a degenerative disc disease with stenosis [*550] at L4-5." Defs Ex. A at CCC 0219. Dr. Grossman, a neurologist, concurred, finding "chronic left L5 radiculopathy." Id. The SSA also relied on physicians for an assessment of plaintiff's functionality, indicating that Dr. Fuller, a colleague of Dr. Browne, "found significant tenderness and limitation of motion despite inactivity and medications such as Ultram and Cataflam." Id. Finally, the SSA rejected the findings of physicians who had observed Edgerton prior to the accident, noting that "they did not have the benefit of any evidence relating to her exacerbated condition since March 17th." Id.

n9 The medical records referenced in this section were not contained within the claims file. Nevertheless, the SSA's decision, which discusses these medical records, was in the file. See supra n.3.

[**25]

Unlike the SSA, which relied upon several physicians, both treating and non-treating, the only medical personnel relied upon by Continental for review and comment of Edgerton's medical condition was Nurse Alexandrowicz. Although Continental is not required to obtain an independent medical examination each time a claim is filed, and under certain circumstances a review of the claimant's medical records by a registered nurse would be appropriate, Continental's failure to do so in this case, given the strong evidence pertaining to disability in the record from Dr. Browne, the treating physician, and the determination of the SSA, suggests that the review performed was inadequate. See Friess v. Reliance Standard Life Ins. Co., 122 F. Supp.2d 566, 574 (E.D. Pa. 2000). See also Holzschuh v. Unum Life Ins. Co., Civ. A. No. 03-1035, 2002 U.S. Dist. LEXIS 13205, *19 (E.D. Pa. July 18, 2002) (noting "also very troubling to this Court, is Defendant's use of nurses and non-treating physicians to deny Plaintiff's claim after sustaining it for over a year").

Nor did Continental undertake the simple step of submitting Edgerton's claim for a physician review of Edgerton's [**26] records. n10 This would have been particularly helpful given that Nurse Alexandrowicz never personally observed or even spoke with Edgerton regarding her condition. Although Nurse Alexandrowicz reviewed the medical records and the claims file on several occasions, Dr. Browne was both the only medical personnel who actually treated Edgerton and who was able to assess her condition personally over time and the only physician who reviewed her records.

n10 Indeed, several courts have criticized defendants for relying on the opinions of physicians who merely reviewed the claims file over the opinions of the plaintiff's treating physicians. See Holzschuh, 2002 U.S. Dist. LEXIS 13205, at *19; Cohen, 155 F. Supp.2d at 352; Dorsey v. Provident Life and Accident Ins. Co., 167 F. Supp.2d 846, 855 (E.D. Pa. 2001). In this case, Continental did not even have Edgerton's file reviewed by a physician, instead relying only on the review conducted by Nurse Alexandrowicz. It may be that, had the defendant undertaken the task of reviewing the Edgerton file by a qualified physician and meeting Dr. Browne's diagnosis squarely, the results of the case could well have been different.

[**27]

In the face of plaintiff's treating physician's consistent medical opinion that Edgerton suffered from chronic lower back pain resulting in her total disability, and the SSA's determination, based upon the medical reports of several physicians, that Edgerton was disabled, Continental relies upon the results of the FCE. Continental contends that the FCE, which indicated that Edgerton could walk, stand, sit and lift consistent with light work and also suggested that Edgerton may have intentionally limited her functionality, demonstrates that Dr. Browne's opinions were extreme and inconsistent.

As the court has noted, Dr. Browne was the plaintiff's treating physician who evaluated her condition over time; the FCE was conducted on a single day by a physical therapist. Dr. Browne, in a report submitted to Continental during the Appeals [*551] Committee's review period, raised questions concerning the accuracy of the findings of the FCE report that went unanswered by the Appeals Committee. Dr. Browne explained that, unlike the physical therapist who conducted the FCE, he has observed Edgerton's condition for several years and has repeatedly noted her difficultly walking, standing and sitting. [**28] Dr. Browne stated that the upper-body lifting findings of the FCE, however, were consistent with his own observations, in that Edgerton's upper

215 F. Supp. 2d 541, *551; 2002 U.S. Dist. LEXIS 15490, **28
34 Employee Benefits Cas. (BNA) 2880

extremity activity strengthened based upon her compensating for her lower back pain. Finally, Dr. Browne noted that in his repeated observations of Edgerton and those of other physicians who have seen her, no physician has ever suggested any intentional limiting or distortion of her test results. He questioned the ability of physical therapist, as opposed to physicians, to understand the difference between intentional guarding and the natural involuntary guarding that occurs in anticipation of a pain producing activity. Continental, in its denial of Edgerton's appeal, merely noted that Dr. Browne's opinions were unsubstantiated, without answering his concerns.

Furthermore, Continental argues that it did not completely ignore Dr. Browne's records, in that it accepted his medical diagnosis of Edgerton's condition, but merely rejected his conclusions drawn from that diagnosis related to functionality. [HN10] Such picking and choosing of Dr. Browne's medical review constitutes a selective reading of the medical records that is impermissible. See Holzschuh, 2002 U.S. Dist. LEXIS 13205, [**29] at *24. Furthermore, in accepting Dr. Browne's medical diagnosis, but refusing to accept his conclusions as to what the practical and functional effects of that diagnosis are, Continental has too narrowly constricted the role of a physician. Continental would have a treating physician merely diagnose - place a name on a physical ailment - without analyzing or assessing the effects of that diagnosis. Physicians, however, are students of the human body and its functions, and as practicing medical professionals, they have a keen understanding of how the human body, when diagnosed with a physical ailment, can react to certain environments. Accordingly, their opinions contain both a diagnosis of the illness and a prognosis of the illness' effect on the human body. Continental's selective acceptance of Dr. Browne's diagnosis, but rejection of his prognosis as to the practical, functional effects of that diagnosis, without providing a reason for doing so, impermissibly limits the scope of Dr. Browne's opinion that the plaintiff was disabled.

In addition to relying on the FCE, Continental points to the vocational reviews conducted by Kristi Campbell and Tony Gulledge. Nevertheless, the first [**30] of these reviews, conducted by Campbell, was performed prior to the motor vehicle accident that exacerbated Edgerton's condition, and thus this review is not applicable to whether Edgerton was disabled for each and every occupation after the date of the automobile accident. Indeed, the SSA similarly indicated that although state agency physicians indicated that Edgerton could perform medium work, those physicians did not have the benefit of evidence relating to her condition after the car accident, and thus were not relevant to the SSA's inquiry.

The second vocational review conducted by Gulledge provides little independent basis to support Continental's decision. Gulledge's initial assessment, after discussing Edgerton's condition with her, was that "there appears to be no reasonable function level for full time sedentary work." Defs' Ex. A at CCC 0091. His assessment changed, however, only upon review of the FCE. At that point, he determined that, [*552] based upon the FCE, Edgerton could perform the work identified by Campbell, even though Campbell's assessment was made prior to the exacerbation of Edgerton's condition. Thus, Gulledge's assessment is based entirely upon the FCE, and cannot [**31] be considered an independent basis from that examination upon which Continental could have relied.

III. CONCLUSION

A close examination of the record reveals that the decision to terminate long term disability benefits was thus based upon the results of one FCE, two vocational reviews, one of which occurred prior to the plaintiff's exacerbation of her original injury and the other that relied on the FCE, and the review of her file by only one medical personnel, Nurse Alexandrowicz. In contrast, Edgerton provided the consistent diagnosis of her treating physician, the only physician to observe Edgerton, who indicated that plaintiff was completely disabled, the determination of the SSA, based upon a review of several physician's medical records, that Edgerton was disabled, and her own statements within the record, as recorded by several of Continental's vocational case managers and her own physician. n11 In light of the plaintiff's treating physician's consistent opinion that the plaintiff is totally disabled, the court finds that Continental's decision was not supported by substantial evidence and thus constitutes an abuse of discretion. The court will remand the case to the administrator [**32] to calculate the past benefits due under the plan.

n11 There is additional information in the claims file in the form of the surveillance that was

215 F. Supp. 2d 541, *552; 2002 U.S. Dist. LEXIS 15490, **32
34 Employee Benefits Cas. (BNA) 2880

conducted in February 1999. The surveillance report provided little relevant information, other than noting that Edgerton walked with a cane.

An appropriate order follows.

ORDER

**AND NOW,** this **6th** day of **August, 2002,** upon consideration of plaintiff's motion for summary judgment (doc. no. 30), defendants reply to plaintiff's motion for summary judgment (doc. no. 34), defendants' motion for summary judgment (doc. no. 31) and plaintiff's response to defendants' motion for summary judgment (doc. no. 33), it is hereby **ORDERED** that the plaintiff's motion (doc. no. 30) is **GRANTED.** The defendants' motion (doc. no. 31) is **DENIED**

**AND IT IS SO ORDERED.**

**EDUARDO C. ROBRENO, J.**

JUDGMENT

**AND NOW,** this **6th** day of **August, 2002,** pursuant to a memorandum dated August 6, 2002, it is hereby **ORDERED** that **JUDGMENT** [**33] is **ENTERED** in favor of plaintiff and against the defendants CNA Insurance Co. and Continental Casualty Co.

It is **FURTHER ORDERED** that the case is remanded to the defendants CNA Insurance Co. and Continental Casualty Co. for calculation of all past due benefits owed.

**AND IT IS SO ORDERED.**

**EDUARDO C. ROBRENO, J.**