LEXSEE


Cited
As of: Apr 25, 2007

**KEVIN BOARDMAN, Plaintiff, v. EDWARDS CENTER, INC. LONG TERM DISABILITY PLAN, and PRINCIPAL LIFE INSURANCE COMPANY, Defendants.**

**CV 02-1384-JE**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON**

**2004 U.S. Dist. LEXIS 9250**

**May 17, 2004, Decided**
**May 18, 2004, Filed**

**DISPOSITION:** [*1] Judgment entered in favor of Plaintiff and against Defendants.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff claimant brought an Employee Retirement Income Security Act action against defendants, his employer's long term disability plan and the plan administrator, challenging the decision to discontinue his long-term disability benefits. The claimant sought retroactive reinstatement of benefits, pre-judgment interest, fees, and costs and a declaration that he remained disabled and was entitled to benefits.

**OVERVIEW:** The claimant left his employment due to back pain. The plan administrator approved his claim for short- and long-term disability benefits based on information from the claimant's treating physician. The plan administrator required the claimant to attend a functional capacity exam performed by an occupational therapy assistant, who indicated he was able to work full time with limitations. The claimant's long-term disability benefits were terminated. The claimant's treating doctor continued to indicate the claimant would probably never be able to return to work. The claimant filed an action against defendants to recover retroactive reinstatement of benefits. The court entered judgment in favor of the claimant, finding he established that he was disabled under the terms of the plan. The opinion of the occupational therapy assistant, who saw the claimant upon only one occasion for the purpose of evaluating his claim, was insufficient to overcome credible evidence from the treating physician, who had examined and treated the claimant on numerous occasions over the course of 12 years. The plan administrator could not arbitrarily refuse to credit the claimant's reliable evidence.

**OUTCOME:** The court entered judgment for the claimant, finding he was entitled to long term disability benefits.

**CORE TERMS:** disability, pain, disabled, long-term, disability benefits, chronic, exam, credibility, waiting period, training, patient, attend, treating physician, laminectomy, completion, effective, diagnosis, claimant, residents, reliable evidence, administrators, laboratory, discredit, x-rays, occupational therapy, standard of review, inability to perform, required to submit, unable to perform, medical evidence

**LexisNexis(R) Headnotes**

Page 1

EXHIBIT G

2004 U.S. Dist. LEXIS 9250, *1
34 Employee Benefits Cas. (BNA) 2880

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
[HN1] The Employee Retirement Income Security Act does not have a treating physician rule.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Funding*
[HN2] Employee Retirement Income Security Act plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence.

*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Funding*
[HN3] Employee Retirement Income Security Act plan administrators have no special burden to explain why they credit reliable evidence over a treating physician's evaluation.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Funding*
[HN4] While "objective" evidence in the form of x-rays or other objectively verifiable laboratory tests and measurements may be preferred, and in some circumstances its absence could prove very significant, not all medical conditions are readily susceptible to verification by x-rays or other laboratory tests. It would be error to make such proof an absolute prerequisite. Rather, the "objective" medical evidence must be considered along with the patient's subjective complaints, credibility, history, the opinions of his doctors, and other relevant factors, in arriving at a disability determination.

*Administrative Law > Judicial Review > Administrative Record > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Judicial Review > Scope of Review*
[HN5] The court's review in Employment Retirement Income Security Act cases is generally limited to the administrative record below.

**COUNSEL:** For Plaintiff: Megan E. Glor, Swanson, Thomas & Croon, Portland, OR.

For Defendant: J. Stephen Werts, Margaret B. Stern, Cable Huston Benedict Haagensen & Lloyd, Portland, OR.

**JUDGES:** John Jelderks, United States Magistrate Judge.

**OPINION BY:** John Jelderks

**OPINION:**

OPINION AND ORDER

JELDERKS, Magistrate Judge:

Plaintiff Kevin Boardman brings this action against defendants Edwards Center, Inc. Long Term Disability Plan and Principal Life Insurance Company. Plaintiff is challenging the decision to discontinue his long-term disability benefits effective November 14, 2001. Plaintiff requests reinstatement of benefits retroactive to November 14, 2001, pre-judgment interest, fees, and costs. Plaintiff also seeks a declaration that he remains disabled and is entitled to benefits.

**BACKGROUND**

Plaintiff is 49 years old. He began work as a group home manager at the Edwards Center on October 10, 1994. His duties included cleaning the group home, preparing meals for residents, transferring disabled residents, providing recreation, maintaining residents' hygiene, record keeping, and implementing and maintaining health and [*2] safety standards. The position required the capacity for heavy work and the ability to physically intervene to prevent injury to clients. Plaintiff left his employment due to back pain. His last day of work at the Edwards Center was August 8, 1999.

Plaintiff has a history of chronic back pain. The L5-S1 disc became herniated in 1987, and he had a laminectomy in May 1994. AR 100182. He has been seen by treatment providers frequently for chronic back pain. He has had at least three MRIs, two of which indicated a disc bulge. He was diagnosed with disc herniation in July 1997 and March 1998. AR 100341, 100344. This diagnosis was following his surgery, but before he stopped work due to disability. He has stated that his ability to manage work duties has decreased due to

Case 1:03-cv-00265-SOM-LEK    Document 88-9    Filed 04/24/2007    Page 3 of 6

2004 U.S. Dist. LEXIS 9250, *2
34 Employee Benefits Cas. (BNA) 2880

continued chronic back pain.

## I. The Disability Plan (the Plan)

The Edwards Center provides its employees with long-term disability coverage. The Plan provides coverage under the following conditions: 1) The employee became disabled while insured, 2) The disability is not subject to certain listed limitations, 3) The employee has completed a benefit waiting period, 4) The employee is under the regular care and [*3] attendance of a physician, and 5) The employee has satisfied the requirements listed in the claims procedures section. AR 100130. Disability is initially defined as the inability to perform the material duties of the employee's normal job. AR 100137. After completion of the benefit waiting period and the two-year period immediately following it, disability is defined as being unable to do the material duties of any job that reasonably fits the employee's background and training. AR 100137.

The claims procedures section of the Plan details how claimants can meet the above conditions. Written proof that disability exists and has been continuous must be sent within six months of completion of the benefit waiting period, with further proof to be sent when requested. AR 100133. Payments will be made only if "complete and proper proof" of disability has been received. AR 100134. A medical exam by a physician may be required. AR 100135. Payments will be discontinued if the claimant fails to provide any required proof of disability or fails to submit to any required medical examination. AR 100131.

## II. Procedural History of Plaintiff's Claim

Dr. Dunlap of Kaiser Permanente [*4] stated in his August 8, 1999 evaluation that plaintiff was totally disabled due to back pain, and could not work until September 6, 1999. He indicated that plaintiff should be reevaluated at that time.

In September 1999, plaintiff was seen on several occasions for back pain, and he began a pain management class at Kaiser Permanente Pain Clinic. AR 100222. On September 16, 1999, Dr. Terry Davis, M.D., reported that plaintiff would be disabled for an additional four months. AR 100190. Dr. Davis has been plaintiff's treating physician since 1987. AR 101028.

On February 9, 2000, after requesting and receiving numerous chart notes and several letters from Dr. Davis regarding plaintiff's disability, defendant approved his claim for short- and long-term disability benefits. The short-term disability period was August 16, 1999, through November 14, 1999. AR 100399. The long-term disability claim was approved effective November 15, 1999, the date following completion of the benefit waiting period. Id. The claim was approved based on plaintiff's inability to perform the material duties of his regular job. AR 100401.

On March 16, 2000, defendant wrote Dr. Davis asking about Plaintiff's [*5] diagnosis and treatment. AR 100401. Dr. Davis's response indicated that there was a pain management plan in place, that he was the sole prescriber for pain medication, and that plaintiff could not sit, walk or stand for any length of time. AR 100402. Dr. Davis also indicated that a Functional Capacity Exam would be appropriate because "*patient in terms of pain control . . . is about as good as he is going to be.*" Id. (emphasis added).

Defendant required plaintiff to attend a Functional Capacity Exam (FCE) on April 20, 2000. AR 100406. The four-hour exam was conducted by Kristi Cox, a Certified Occupational Therapy Assistant. AR 100413-417. Cox indicated that plaintiff was able to work full time, but that plaintiff had limitations due to subjective complaints of low back pain. AR 100415.

On May 18, 2000, defendant informed plaintiff that his long-term disability benefits would terminate on November 14, 2001. AR 100431. The letter based this termination on the findings of the FCE and plaintiff's background and training. AR 100430.

In a September, 2001 inquiry to Dr. Davis, defendant inquired whether plaintiff's restrictions had changed. AR 100698. This letter provided a yes-or-no [*6] check box and the question said, "[in] review of this report and the restrictions and limitations provided do you feel these to have changed?" Id. Dr. Davis checked the "no" box. On October 16, 2001, Dr. Davis wrote a letter to defendant stating, "I doubt if he will ever be able to return to work." AR 100705.

In a November 12, 2001 letter, defendant terminated plaintiff's disability benefits effective November 14, 2001. That letter stated that "based on the findings from your Functional Capacity Evaluation it appears that you would not continue to qualify for Long Term Disability

Case 1:03-cv-00265-SOM-LEK   Document 88-9   Filed 04/24/2007   Page 4 of 6

2004 U.S. Dist. LEXIS 9250, *6
34 Employee Benefits Cas. (BNA) 2880

benefits beyond November 14, 2001." AR 100767.

Plaintiff appealed this decision by letter dated March 27, 2002. On April 18, 2002, Defendant notified plaintiff that the claim would be reviewed by its medical department. AR 100806. Defendant's internal memoranda reflect that it would require objective medical evidence to support plaintiff's claim, and that an independent medical exam (IME) might help to identify ways to ameliorate plaintiff's pain symptoms. AR 100810. On June 5, 2002, defendant wrote plaintiff's attorney again, stating that the claim was being reviewed. Internal memoranda reflect that [*7] defendant's position was that the FCE indicated plaintiff was able to work. AR 100818. Defendant did not ask plaintiff to submit to an IME at that time.

By July 9, 2002 letter, defendant requested that plaintiff attend a second Functional Capacity Evaluation. AR 100828. Plaintiff replied that he would not attend because the Plan did not require him to submit to medical examinations by non-physicians. AR 100836. After receiving several calls from defendant, plaintiff reiterated by letter dated August 2, 2002, that he would not attend an FCE because the request was untimely, defendant already had a clear statement from Dr. Davis, and that in such exams the evaluator often renders an opinion about the patient's efforts without a reasonable basis for such opinion. AR 100847. Plaintiff states that defendant has never issued a final denial in his case. Pl.'s Br. at 23.

### III. Plaintiff's Contentions

Plaintiff asserts that defendant erred by denying his disability coverage beyond the period in which the disability requirement is less stringent. During that earlier period, plaintiff only had to show that he was unable to perform his own job. Afterward, the Plan required him to show [*8] that he was unable to perform any job that fit his background and training. Plaintiff received benefits for the short-term disability period and the two-year period afterward, which ended on November 14, 2001.

Plaintiff contends that defendant based its decision to terminate benefits primarily on the results of the FCE. Plaintiff argues that the Plan could require an independent examination only by a physician. Plaintiff notes that an occupational therapy assistant is not a physician under the language of the Plan, which defines physician as "a licensed Doctor of Medicine or Osteopathy" or "any other licensed health care practitioner that state law requires be recognized as a Physician."

Plaintiff asserts that he is unable to work on any job that fits his background and training, and claims that chronic severe back pain has gradually reduced his ability to work. He offers the opinion of his treating physician of twelve years, Dr. Davis, that his pain has increased to the point of precluding gainful employment.

### DISCUSSION

### I. Standard of Review

In my August 15, 2003 opinion, I determined that the standard of review in this case is de novo.

### II. Analysis [*9]

Dr. Davis, plaintiff's physician, stated in multiple letters and reports that plaintiff is disabled due to chronic back pain. He arrived at this conclusion after treating plaintiff for years, and trying many types of treatment and medication without significant success. Dr. Davis also reported that the MRI findings supported his diagnosis.

Defendant discounted Dr. Davis's opinion in favor of the opinion of an occupational therapist following a single exam (the FCE), and an evaluation of the FCE report done by Dr. Fiorica, a physician in defendant's medical department who did not examine plaintiff. Dr. Fiorica based his opinion of plaintiff's disability on the FCE. The real question in this case is whether Dr. Davis's opinion and treatment history are entitled to more weight than the FCE and subsequent report based thereon. I conclude that they are.

While [HN1] ERISA does not have a treating physician rule, [HN2] Plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence. Black and Decker Disability Plan v. Nord, 538 U.S. 822, 834, 155 L. Ed. 2d 1034, 123 S. Ct. 1965 (2003). Although [HN3] Plan administrators have no special burden to explain why they credit reliable evidence [*10] over a treating physician's evaluation, id., defendant did not have sufficient evidence to discredit Dr. Davis's evaluation.

Defendant argues that plaintiff has the burden of proving that he is disabled, and must furnish written proof of continued disability upon request. Defendant contends that outpatient progress notes, physiatry consult,

Case 1:03-cv-00265-SOM-LEK   Document 88-9   Filed 04/24/2007   Page 5 of 6

2004 U.S. Dist. LEXIS 9250, *10
34 Employee Benefits Cas. (BNA) 2880

and an MRI are not "proof" as defined in the Plan because those documents do not discuss disability and do not support Dr. Davis's opinion in his October 16, 2001 letter. I disagree.

Defendant also contends that disability must be proven through "objective" evidence in the form of x-rays or other objectively verifiable laboratory tests and measurements. [HN4] While such evidence may be preferred, and in some circumstances its absence could prove very significant, "not all medical conditions are readily susceptible to verification by x-rays or other laboratory tests." Palmer v. University Medical Group, 994 F. Supp. 1221, 1233 (D. Or. 1998). Back pain is a classic example of a condition that, at least with present technology, is not always "objectively" verifiable in the manner defendant demands. It would be error to make such proof [*11] an absolute prerequisite. Rather, the "objective" medical evidence must be considered along with the patient's subjective complaints, credibility, history, the opinions of his doctors, and other relevant factors, in arriving at a disability determination.

Defendant also attempts to characterize Dr. Davis's response to the FCE as an agreement with that evaluation's findings. As plaintiff has pointed out, the letter that Dr. Davis received was written in a confusing and equivocal manner, and Dr. Davis's subsequent letters made it clear he did not agree with the FCE and continued to find that plaintiff was disabled.

Defendant makes much of the fact that plaintiff refused to submit to a second FCE. Plaintiff correctly pointed out that he was not required to submit to examinations by anyone other than physicians, by the Plan's own language. There is no indication in the record that the FCE was to be performed in conjunction with an examination by a physician. Defendant finally petitioned this court on March 11, 2003, to order plaintiff to submit to an IME, which is what defendant would have originally been entitled to request pursuant to the Plan. I ruled on May 5, 2003, that plaintiff [*12] was not required to submit to an IME because [HN5] the court's review in ERISA cases is generally limited to the administrative record below, and found that the plaintiff was entitled to have the decision reviewed at this time.

Defendant attempts to attack the credibility of Dr. Davis by asserting that he was inconsistent in his statements concerning the number of laminectomies plaintiff has had. Dr. Davis stated in one letter that plaintiff has had two laminectomies; defendant says plaintiff only had one. The record indicates that plaintiff only had one procedure, but that *two* discs were removed. This use of language does not undermine Dr. Davis's credibility. Defendant also attempts to discredit Dr. Davis by claiming that he failed to respond to Principal's requests for medical records. Defendant's own phone records indicate that Dr. Davis sent a request to Kaiser Medical Records to provide those reports to defendant. AR 101005. Kaiser made three attempts to send those reports to defendant. AR 100997, 983. Those same phone logs indicate that defendant did receive three sets of medical records from Kaiser in January 2000. AR 100982. Although it took some time for the records to arrive, [*13] Dr. Davis's credibility is not undermined by the actions of the medical records staff at Kaiser.

Defendant notes that when Dr. Jacobs examined plaintiff in 1997 and 1998, he did not mention plaintiff's inability to work at any job. However, plaintiff did not claim disability at that time, and was still working. His last day of work was August 8, 1999. Therefore, lack of discussion about disability prior to 1999 does not negate plaintiff's claim of disability commencing in August 1999.

After considering all the circumstances, I find that the opinion of an occupational therapy assistant, who saw the plaintiff upon only one occasion for the purpose of evaluating his claim, is insufficient to overcome credible evidence from a physician who has examined and treated this patient on numerous occasions over the course of 12 years.

I find that the plaintiff established that he is disabled under the terms of the long-term disability Plan. Plaintiff is entitled to reinstatement of his disability benefits retroactive to November 14, 2001. He is entitled to receive benefits while he remains disabled as defined under the terms of the long-term disability Plan.

**CONCLUSION**

Judgment [*14] will be entered for the plaintiff.

DATED this 17th day of May, 2004.

/s/ John Jelderks

U.S. Magistrate Judge

**JUDGMENT**

2004 U.S. Dist. LEXIS 9250, *14
34 Employee Benefits Cas. (BNA) 2880

Based on the record,

    IT IS ORDERED AND ADJUDGED that judgment is entered in favor of Plaintiff and against Defendants. Pending motions, if any, are DENIED AS MOOT.

    Dated this 17 day of May, 2004.

by

John Jelderks

United States Magistrate Judge